UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.                                            Case No: 8:24-cv-1626-KKM-AAS

START CONNECTING LLC, et al.,

    Defendants.
_____

## ORDER

The FTC brings a civil enforcement action against five defendants (two corporate entities and their three individual members) for operating a deceptive student loan debt relief scheme. Defendants Douglas R. Goodman and Doris E. Gallon-Goodman move for a more definite statement. Goodman Mot. for More Def. Statement (Doc. 51) (Goodman MDS). Defendant Start Connecting LLC, the U.S.-based corporate defendant, separately moves for a more definite statement and raises similar arguments. Start Connecting LLC Mot. for More Def. Statement (Doc. 82) (Start Connecting MDS). I address them jointly. The FTC's complaint alleges that the defendants' student debt relief businesses violated section 5(a) of the FTC Act, 15 U.S.C. § 45(a), among other regulations and statutes. Compl. (Doc. 1). The movants contend that, because the FTC's complaint refers to them

as the "Defendants" generally, it is lacking in specificity and they thus lack the requisite notice to respond. *See* Goodman MDS; Start Connecting MDS. For the reasons below, I deny the motions.

I. BACKGROUND

Since February 2019, the defendants (Start Connecting LLC; Goodman; Gallon-Goodman; Start Connecting SAS; and Juan Rojas), either "acting alone or in concert," have run a student debt relief operation known as "USA Student Debt Relief" (USASDR).[1] Compl. ¶¶ 2, 11. Start Connecting LLC is a Florida limited liability company that also does business as USASDR. *Id.* ¶ 9. Start Connecting SAS is a Colombian corporation that has sold student debt relief services to consumers throughout the United States and does business as USASDR. Douglas R. Goodman is the majority owner and president of USASDR, as well as one of its three authorized members. *Id.* ¶ 11. Goodman's wife, Doris E. Gallon-Goodman, is a manager and member of USASDR. *Id.* ¶ 12. Gallon-Goodman's son, Juan S. Rojas, is the third member and manager of USASDR, and holds himself out as the CEO of Start Connecting SAS. *Id.* ¶ 13.

As part of their marketing strategy, the defendants represent that they are affiliated with the United States Department of Education or loan servicers contracted by the

---

[1] USASDR is not a named defendant in the complaint. *See* Compl. ¶¶ 9–13. It appears to be the front-facing name of the alleged scheme and is used in that capacity throughout the Order, not as a reference to only Start Connecting SAS and Start Connecting LLC.

Department of Education. *Id.* ¶ 24. A "Sales Script" requires the defendants' agents to say that USASDR "work[s] with Federal Programs" and the software they use "is linked with the Department of Education's repayment calculator." *Id.* ¶ 25. USASDR's social media advertising uses pictures of former President Joe Biden, and often lists Biden administration student debt relief deadlines for consumers. *Id.* ¶ 26. Other social media posts claim that "[y]ou can trust us as we work with organizations backed by the U.S. Department of Education." *Id.* ¶ 27.

USASDR uses an online advertising and telemarketing campaign to target Spanish-speaking consumers in Puerto Rico. *Id.* ¶¶ 2, 22. Operating an "aggressive telemarketing campaign from their call center in Colombia," the defendants have place around 750,000 outbound calls, 140,000 of which were to numbers on the National Do Not Call Registry. *Id.* ¶¶ 22–23. Nearly thirty percent of its outbound calls went to individuals in Puerto Rico. *Id.* ¶ 22. USASDR also posts fake consumer testimonials on Facebook and Instagram. *Id.* ¶¶ 46–50.

The defendants convey to potential clients "that they qualify for federal programs that offer low, fixed monthly loan payments followed by lump-sum loan forgiveness," but that "to take advantage of these programs," the defendants require an up-front fee of several hundred dollars. *Id.* ¶¶ 3, 23. Once the initial fee is paid, the defendants represent that "consumers' fixed monthly payments will be applied to their loan balances." *Id.* ¶¶ 4, 23.

The defendants then keep the monthly payments. *Id.* ¶ 4. Through these practices, the defendants have "bilk[ed] consumers out of millions of dollars." *Id.* ¶ 5.

As part of their process, the defendants often gain access to clients' Federal Student Aid accounts. *Id.* ¶ 29. With information from clients' student aid accounts, the defendants review loan information with clients over the phone. *Id.* Without clients' authorization or knowledge, the defendants often then change account information such as passwords, causing some clients to lose access to their accounts and then stop receiving correspondence from their loan service providers. *Id.* ¶ 28.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(e), a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed." A more definite statement is warranted if a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." *Id.* Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." And "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id.*

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has explained that such complaints are "altogether unacceptable" because they "exact an intolerable toll on the trial court's docket." *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997). The Eleventh Circuit has recognized four basic types of shotgun pleadings: (1) a complaint that contains multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into different counts each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against. *Weiland*, 792 F.3d at 1321–23. But "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

## III.  ANALYSIS

The crux of both motions is that the FTC's complaint commits "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of

the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against," *id.*, and they therefore lack the requisite notice for responding to the complaint, *see* Goodman MDS; Start Connecting MDS.

Here, the FTC's theory of "common enterprise" liability justifies referencing allegations towards the "Defendants" as a group. Under the FTC Act, the "common enterprise" theory allows corporate entities to be held responsible for each other's actions. *FTC v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1239–40 (11th Cir. 2017). In assessing whether corporate entities are part of a common enterprise, a court should consider "whether the businesses operated under common control, shared office space and employees, commingled funds, and coordinated advertising." *FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066, 1081–82 (11th Cir. 2021) (citing *FTC v. Lanier Law, LLC*, 715 F. App'x 970, 979–80 (11th Cir. 2017) (per curiam)).

The complaint alleges facts showing that the corporate defendants form a common enterprise, giving the movants sufficient notice of the claims against them. Many of the alleged acts were done under the auspices of USASDR, and the complaint alleges various business connections between each corporation. *See* Compl. ¶¶ 9–11, 13 (Start Connecting LLC managed "telephone numbers," "domain names," and "merchant processing accounts" associated with USASDR, while its "sister company" Start Connecting SAS operated the Colombian call center targeting American consumers with

6

USASDR's telemarketing calls). Because the common enterprise theory puts the defendants on notice that they are jointly and severally liable for the acts of the others, it cannot be said that the "pleading is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e); *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 732 (11th Cir. 2020) (noting that the purpose of the pleading standard is to give defendants "fair notice of what the claim is and the grounds upon which it rests" (quoting *Twombly*, 550 U.S. at 555))); *see FTC v. HES Merch. Servs. Co.*, No. 6:12-CV-1618-ORL-22, 2014 WL 6863506, at *5–6 (M.D. Fla. Nov. 18, 2014) (concluding that the FTC successfully pleaded claims under the common enterprise theory when referring to the defendants collectively), *aff'd in part and vacated in part on other grounds sub nom. FTC v. HES Merch. Servs. Co., Inc.*, 652 F. App'x 837 (11th Cir. 2016) (per curiam).

    The movants also argue that several specific allegations are "inconsistent [and] unspecific," and therefore the complaint fails to identify "which of the defendants are responsible for which acts or omissions." Goodman MDS at 5, 7 (quoting *Weiland*, 792 F.3d at 1323); Start Connecting MDS at 6, 9 (quoting *Weiland*, 792 F.3d at 1323). Two such examples of these "inconsistencies" include alleging that the defendants operate a call center from Colombia, although only Start Connecting SAS operates out of Colombia, and alleging that the defendants settled state enforcement actions, yet it was only Goodman

7

and Start Connecting LLC that did so. Goodman MDS at 4–5; Start Connecting MDS at 6. But, as the movants themselves admit, the FTC did in fact specify who committed those acts. Compl. ¶ 11 (explaining that Start Connecting SAS operates the telemarketing out of Colombia); *id.* ¶ 57 (stating that Goodman and USASDR[2] settled state claims brought against them). This puts the movants on notice as to who is accused of which acts, and thus alleviates any perceived confusion. *See Weiland*, 792 F.3d at 1323.

The movants also take issue with the FTC's mention of certain social media posts attributed to "the Defendants" without explaining who is thought to have posted them. Goodman MDS at 4; Start Connecting MDS at 5. But they were posted by USASDR, and, as the FTC alleged, much of the defendants' front-facing activities were conducted under the auspices of that name. Compl. ¶¶ 2, 9. Without full knowledge of the inner workings of USASDR at the pleading stage, the FTC is neither required, nor allowed, to assert allegations without having the requisite knowledge to do so. *Id.* ¶¶ 9–13; *see* FED. R. CIV. P. 11(b)(3) ("By presenting to the court a pleading" an attorney represents to the court that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."). To the extent that the movants' arguments sound in the legal sufficiency of

---

[2] The FTC alleges that Goodman and USASDR settled state enforcement actions against them, Compl. ¶ 57, though the movants state that the enforcement actions were settled by Goodman and Start Connecting LLC, Goodman MDS at 5; Start Connecting MDS at 6. I assume the movants use the names interchangeably.

the claim stated, those concerns are better reserved for a motion to dismiss or motion for summary judgment.

Goodman and Gallon-Goodman respond that only the two corporate entities are alleged to have participated in a "common enterprise," and the complaint did not specifically list them as being a part of the "common enterprise." Goodman MDS at 3. But individuals can be held liable for a corporate entity's FTC Act violations (and, in turn, the acts of a common enterprise) if they "had some knowledge of the practices" and "participated directly in the practices or acts or had the authority to control them." *On Point Cap. Partners LLC*, 17 F.4th at 1083 (quoting *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir 1996)); *Lanier Law, LLC*, 715 F. App'x at 975, 980 (affirming summary judgment in favor of the FTC on the basis that the FTC established that the defendant "was individually liable for 'the deceptive acts of the common enterprise' "). The FTC alleges facts supporting their individual liability for the common enterprise's violations under the Act. Compl. ¶¶ 11–13 (alleging that the individual defendants took various actions on behalf of the corporate defendants, including acting as signatories and holding positions of membership and ownership). Thus, the FTC need not have specifically alleged that Goodman and Gallon-Goodman formed part of the "common enterprise" to give them notice that they are liable for acts of the enterprise entities.

## IV. CONCLUSION

Because the complaint is not "so vague or ambiguous that [a] party cannot reasonably prepare a response," FED. R. CIV. P. 12(e), the Motions for More Definite Statement (Docs. 51, 82) are **DENIED**.

Accordingly, Defendants Goodman, Gallon-Goodman, and Start Connecting LLC are directed to respond to the Complaint (Doc. 1) no later than **March 11, 2025**.

**ORDERED** in Tampa, Florida, on February 25, 2025.

Kathryn Kimball Mizelle
United States District Judge