## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.                             Case No. 8:24-cv-01626-KKM-AAS

START CONNECTING LLC, et al.,

     Defendants.

_____

## **ORDER**

In an August 22, 2025, report (Doc. 212), the United States Magistrate Judge recommends that I grant the Federal Trade Commission's (FTC) motion for default judgment against Start Connecting SAS and Juan S. Rojas. (Doc. 209). The deadline to object has passed without an objection.

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's Report and Recommendation. 28 U.S.C. § 636(b)(1). If a party files a timely and specific objection to a finding of fact by a magistrate judge, the district court must conduct a de novo review of that factual issue. *Stokes v. Singletary*, 952 F.2d 1567, 1576 (11th Cir. 1992). The district court reviews legal conclusions de novo, even absent an objection. *See Cooper-Houston v. S.*

*Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *Ashworth v. Glades Cnty. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019).

In the absence of any objection and after reviewing the factual allegations and legal conclusions, I adopt the Report and Recommendation.

Accordingly, the following is **ORDERED**:

1.    The Magistrate Judge's Report and Recommendation (Doc. 212) is **ADOPTED** and made a part of this Order for all purposes.

2.    The FTC's Motion for Default Judgment against Start Connecting SAS and Juan S. Rojas (Doc. 209) is **GRANTED**.

3.    The FTC is granted leave to submit its proposed final judgment order and permanent injunction under Local Rule 3.01(j). (Doc. 209-1).

In the light of the FTC's proposed final judgment, (Doc. 209-1), I further make the following findings of law and fact in support of the entry of a permanent injunction and monetary judgment against Start Connecting SAS and Juan S. Rojas:

## FINDINGS

1.    The FTC brought this action pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) & 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and Section 522(a) of the Gramm-Leach-Bliley (GLB) Act, 15 U.S.C. § 6822(a). The FTC seeks both permanent injunctive and monetary

relief for deceptive, unfair, and unlawful acts and practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, multiple provisions of the FTC's Telemarketing Sales Rule (TSR), 16 C.F.R. pt 310, and Section 521 of the GLB Act, 15 U.S.C. § 6821, by Defendants in connection with the marketing and sale of student loan debt relief services.

2.     The FTC has authority under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) & 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), to seek the relief it has requested, and the Complaint states claims upon which relief can be granted against the Defaulting Defendants.

3.     The Court has jurisdiction over the subject matter of this action and personal jurisdiction over the Defaulting Defendants pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, as well as 15 U.S.C. §§ 45(a), 53(b), 57b, 6105(b), and 6822(a). Venue in the Middle District of Florida, Tampa Division, is proper under 15 U.S.C. § 53(b), 28 U.S.C. § 1391(b)–(c), and Local Rule 1.04(b).

4.     Defaulting Defendants were properly served with notice of this lawsuit, *see* (Doc. 18-1, ¶ 2); (Doc. 86-1 at 5–6), and have waived service of a summons pursuant to Federal Rule of Civil Procedure 4(d), *see* (Docs. 39–40).

5.     To date, neither Defaulting Defendant has filed an answer or any other response to the FTC's Complaint, and the time for them to answer, plead,

or otherwise defend against the Complaint under Federal Rule of Civil Procedure 12(a) has expired. *See* (Doc. 48).

6.    The Court is not aware that either Defaulting Defendant has filed for bankruptcy.

7.    The Clerk entered default under Federal Rule of Civil Procedure 55(a) against both Defaulting Defendants on October 29, 2024. *See* (Doc. 91).

8.    Because of Defaulting Defendants' default, the Complaint's well pleaded factual allegations are taken as true.

9.    The FTC is an agency of the U.S. Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. *See* 15 U.S.C. §§ 41–58. The FTC enforces Section 5(a) of the FTC Act, which prohibits unfair or deceptive acts or practices in or affecting commerce. *See* 15 U.S.C. § 45(a). The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101–08. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. pt. 310, which prohibits deceptive or abusive telemarketing acts or practices in or affecting commerce. The FTC also enforces Section 521 of the GLB Act, 15 U.S.C. § 6821, which prohibits any person from obtaining or attempting to obtain customer information of a financial institution relating to another person by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution.

10.    Defendant Start Connecting SAS is a Colombia corporation with a principal place of business at Calle 16 N # 6N-21, Oficina (401), Santiago de Cali, Valle del Cauca, 760045, Colombia. *See* (Doc. 55 at 2). Defendant Start Connecting SAS has transacted business in this District and throughout the United States. *See* (Doc. 1 ¶¶ 10–11, 13, 23). At all times relevant to the Complaint, acting alone or in concert with others, Defendant Start Connecting SAS has advertised, marketed, distributed, or sold student loan debt relief services to consumers throughout the United States. *See id.*

11.    Defendant Start Connecting SAS formed a common enterprise with Defendant Start Connecting LLC—operating together under the name "USA Student Debt Relief"—making Defendant Start Connecting SAS jointly and severally liable for misconduct by another entity in the enterprise. *See* (Doc. 1 ¶ 14). This Court previously held that "[t]he complaint alleges facts showing that the corporate defendants form a common enterprise" by alleging "various business connections between each corporation," (Doc. 144 at 6 (reported at 2025 WL 605445, at *3 (M.D. Fla. Feb. 25, 2025))), including "common ownership, officers, and business functions" as well as "commingled funds," (Doc. 1 ¶ 14). Specifically, the Complaint states that Defendant Start Connecting SAS operated the Colombian call center targeting American consumers under the business name USA Student Debt Relief—which it shared with Defendant Start Connecting LLC—using funds offshored from

Defendant Start Connecting LLC's bank accounts. *See* (Doc. 1 ¶¶ 9–13); *see also* (Doc. 144 at 6–7 (reported at 2025 WL 605445, at *3)).

12.    Defendant Juan S. Rojas is a citizen of the Republic of Colombia whose address is Calle 16 N # 6N-21, Oficina (401), Santiago de Cali, Valle del Cauca, 760045, Colombia. *See* (Doc. 55 at 2). As a former manager and authorized member of Defendant Start Connecting LLC and the chief executive officer of Defendant Start Connecting SAS, Defendant Rojas has transacted business in this District and throughout the United States. *See* (Doc. 1 ¶¶ 13, 23). At all times relevant to the Complaint, acting alone or in concert with others, Defendant Rojas has advertised, marketed, distributed, or sold student loan debt relief services to consumers throughout the United States. *See id.*

13.    Because Defendant Rojas had knowledge of the acts and practices of the common enterprise operating under the name USA Student Debt Relief and participated directly in those acts and practices or had the authority to control them, he is jointly and severally liable for the misconduct alleged in the Complaint. *See* (Doc. 1 ¶ 13); *see also* (Doc. 144 at 9 (reported at 2025 WL 605445, at *4)). Specifically, the Complaint states that Defendant Rojas served as a corporate officer of both Corporate Defendants, oversaw Defendants' Colombian call center and telemarketing operation, registered and paid for domain names associated with both Corporate Defendants, served as a point

of contact for Defendants' payment processing accounts, and personally handled consumer complaints on Defendants' behalf, all of which is sufficient to establish his individual liability. *See id.*

14.    At all times relevant to the Complaint, the Defaulting Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined at Section 4 of the FTC Act, 15 U.S.C. § 44. *See* (Doc. 1 ¶¶ 15, 22).

15.    Defendants have deceived consumers, many of whom were low-income borrowers struggling with student loan debt, into paying hundreds of dollars for debt relief services that are made up, not as described, or simply never materialize. *See* (Doc. 1 ¶¶ 2, 16, 21, 23, 40). Defendants have told consumers that (a) Defendants are affiliated or work directly with the U.S. government, including specifically the U.S. Department of Education ("ED") or ED-contracted loan servicers; (b) Defendants could place consumers in repayment plans with permanently fixed monthly payments—typically of only $9, $19, or $29 for a period of ten or twenty years—at which point the remaining balance would be forgiven in full; (c) advance fees are required to enroll in federal student loan repayment or forgiveness programs; and (d) consumers' monthly payments would go toward their student loans. *See* (Doc. 1 ¶¶ 23, 63); *see also* (Doc. 144 at 2–4 (reported at 2025 WL 605445, at *1–2)). But Defendants' representations were false: They were not affiliated with ED

or federal student loan servicers; they could not provide the student loan debt relief they promised; advance fees are not required to enroll in federal student loan repayment or forgiveness programs; and Defendants never applied consumers' payments toward their student loans. *See* (Doc. 1 ¶¶ 19, 24, 32–33, 39). Consumers have paid significant sums to Defendants only to discover that Defendants' representations were false. *See* (Doc. 1 ¶¶ 5, 41–42).

16.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of student loan debt relief services, Defendants have represented, directly or indirectly, expressly or by implication, that (a) Defendants are affiliated or work directly with ED or federal student loan servicers; (b) Defendants would enroll consumers in a student loan repayment or forgiveness program that would reduce their monthly payments to a guaranteed low, fixed amount for a set number of years, whereupon the remaining loan balance would be forgiven in full; (c) consumers must pay an advance fee to enroll in free federal student loan repayment or forgiveness programs; and (d) consumers' monthly payments would go toward their student loans. *See* (Doc. 1 ¶¶ 24–42, 63); *see also* (Doc. 144 at 2–3 (reported at 2025 WL 605445, at *1–2)). In fact, in numerous instances in which Defendants have made these representations, such representations were false or unsubstantiated at the time Defendants made them. See (Doc. 1 ¶¶ 24–42, 64). Therefore, these representations are false or misleading and

constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act,

15 U.S.C. § 45(a). Accordingly, the Defaulting Defendants have violated

Section 5 of the FTC Act, as alleged in Count I of the Complaint. *See* (Doc. 1

¶¶ 60–65).

17.    In numerous instances in connection with the advertising,

marketing, promotion, offering for sale, or sale of student loan debt relief

services, Defendants have represented, directly or indirectly, expressly or by

implication, that certain reviews of and testimonials about Defendants'

business are from actual customers of the business. (Doc. 1 ¶¶ 47–48, 66); *see*

*also* (Doc. 144 at 3 (reported at 2025 WL 605445, at *1)). In fact, in numerous

instances in which Defendants made such representations, the reviews and

testimonials about Defendants' business were fabricated by Defendants or by

others on Defendants' behalf. *See* (Doc. 1 ¶¶ 49–50, 67). Therefore, these

representations are false or misleading and constitute deceptive acts or

practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

Accordingly, the Defaulting Defendants have violated Section 5 of the FTC Act,

as alleged in Count II of the Complaint. *See* (Doc. 1 ¶¶ 60–62, 66–68).

18.    In numerous instances in connection with the advertising,

marketing, promotion, offering for sale, or sale of student loan debt relief

services, Defendants have unfairly provided consumers with a contract that is

in English even when Defendants' sales pitch and email communications are

in Spanish and many of Defendants' customers do not speak or read English fluently. *See* (Doc. 1 ¶¶ 22, 43, 69). This mismatch between the language of Defendants' sales pitch (Spanish) and contracts (English) is likely to cause substantial injury to consumers that consumers could not reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. *See* (Doc. 1 ¶ 70); *see also* 16 C.F.R. § 14.9(a). Therefore, the mismatch between Defendants' Spanish-language sales pitch and English-language contracts is an unfair act and practice in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n). Accordingly, the Defaulting Defendants have violated Section 5 of the FTC Act, as alleged in Count III of the Complaint. *See* (Doc. 1 ¶¶ 60–62, 69–71).

19.    In numerous instances in connection with the telemarketing of student loan debt relief services, Defendants have requested or received payment of a fee or consideration for debt relief services before (a) Defendants have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and (b) the customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor. *See* (Doc. 1 ¶¶ 36–38, 84); *see also* (Doc. 144 at 3 (reported at 2025 WL 605445, at *2)). These acts or practices constitute

abusive telemarketing acts or practices that violate Section 310.4(a)(5)(i) of the TSR, 16 C.F.R. § 310.4(a)(5)(i), and thus Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, the Defaulting Defendants have violated Section 310.4(a)(5)(i) of the TSR and Section 5(a) of the FTC Act, as alleged in Count IV of the Complaint. *See* (Doc. 1 ¶¶ 72–85).

20.    In numerous instances in connection with the telemarketing of student loan debt relief services, Defendants have, expressly or by implication, misrepresented that they are affiliated with or endorsed or sponsored by ED or federal student loan servicers. *See* (Doc. 1 ¶¶ 24–29, 86); *see also* Doc. 144 at 2–3 (reported at 2025 WL 605445, at *1)). In fact, Defendants are not and have never been affiliated with ED or any ED- contracted loan servicer. *See* (Doc. 1 ¶ 24). These acts or practices constitute deceptive telemarketing acts or practices that violate Section 310.3(a)(2)(vii) of the TSR, 16 C.F.R. § 310.3(a)(2)(vii), and thus Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, the Defaulting Defendants have violated Section 310.3(a)(2)(vii) and Section 5(a) of the FTC Act, as alleged in Count V of the Complaint. *See* (Doc. 1 ¶¶ 72–83, 86–87).

21.    In numerous instances in connection with the telemarketing of student loan debt relief services, Defendants have misrepresented, directly or indirectly, expressly or by implication, material aspects of their debt relief services, including that (a) Defendants could obtain for consumers repayment

plans that would reduce their monthly payments to a guaranteed, low, fixed amount for a set number of years, whereupon the remaining balance would be forgiven in full; (b) advance fees are required to enroll in federal student loan repayment or forgiveness programs; and (c) consumers' monthly payments would go toward their student loans. *See* (Doc. 1 ¶¶ 23, 63); see also (Doc. 144 at 2–4 (reported at 2025 WL 605445, at *1–2)). These acts or practices are deceptive telemarketing acts and practices that violate Section 310.3(a)(2)(x) of the TSR, 16 C.F.R. § 310.3(a)(2)(x), and thus Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, the Defaulting Defendants have violated Section 310.3(a)(2)(x) of the TSR and Section 5(a) of the FTC Act, as alleged in Count VI of the Complaint. *See* (Doc. 1 ¶¶ 72–83, 88–89).

22.    In thousands of instances in connection with the telemarketing of student loan debt relief services, Defendants have initiated or caused others to initiate outbound telephone calls to customers who have registered their telephone numbers on the National Do Not Call Registry maintained by the Commission. *See* (Doc. 1 ¶¶ 23, 52, 90); *see also* (Doc. 144 at 3 (reported at 2025 WL 605445, at *1)). These acts or practices constitute abusive telemarketing acts or practices that violate Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B), and thus Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly,    the    Defaulting    Defendants    have    violated    Section 310.4(b)(1)(iii)(B) of the TSR and Section 5(a) of the FTC Act, as alleged in

Count VII of the Complaint. *See* (Doc. 1 ¶¶ 72–83, 90–91).

23.    In thousands of instances in connection with the telemarketing of student loan debt relief services, Defendants have initiated or caused others to initiate outbound telephone calls to customers within a given area code when Defendants had not, either directly or through another person, paid the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission under Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B). *See* (Doc. 1 ¶¶ 53, 92). These acts or practices constitute violations of Section 310.8 of the TSR, 16 C.F.R. § 310.8, and thus Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, the Defaulting Defendants have violated Section 310.8 of the TSR and Section 5(a) of the FTC Act, as alleged in Count VIII of the Complaint. *See* (Doc. 1 ¶¶ 72–83, 92–93).

24.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, and sale of student loan debt relief services, Defendants have made false, fictitious, or fraudulent statements or representations to customers of financial institutions in order to obtain or attempt to obtain customer information of a financial institution, such as credit or debit card numbers. *See* (Doc. 1 ¶¶ 38, 99). Specifically, Defendants have represented, directly or indirectly, expressly or by implication, that (a) Defendants are affiliated or work directly with ED or federal student loan

servicers; (b) Defendants would enroll consumers in a student loan repayment or forgiveness program that would reduce their monthly payments to a guaranteed low, fixed amount for a set number of years, whereupon the remaining loan balance would be forgiven in full; (c) consumers must pay an advance fee to enroll in free federal student loan repayment or forgiveness programs; and (d) consumers' monthly payments would go toward their student loans. *See* (Doc. 1 ¶¶ 24–42, 100); *see also* (Doc. 144 at 2–3 (reported at 2025 WL 605445, at *1–2)). These representations are "false, fictitious, or fraudulent" within the meaning of Section 521(a)(2) of the GLB Act, 15 U.S.C. § 6821(a)(2), and thus constitute a violation of GLB Act as well as Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, the Defaulting Defendants have violated Section 521(a)(2) of the GLB Act and Section 5(a) of the FTC Act, as alleged in Count IX of the Complaint. *See* (Doc. 1 ¶¶ 94–102).

25.    Section 13(b) of the FTC Act authorizes this Court to grant a "permanent injunction" to halt violations of "any provision of law enforced by the [FTC]." 15 U.S.C. § 53(b).

26.    Consumers have suffered and will continue to suffer substantial injury as a result of the Defaulting Defendants' violations of Section 5 of the FTC Act, the TSR, and the GLB Act. *See* (Doc. 1 ¶ 103). The Court finds that, absent a permanent injunction, the Defaulting Defendants are likely to continue to engage in the activities alleged in the Complaint.

27.    The danger of future violations by the Defaulting Defendants justifies the issuance of permanent injunctive relief. Specifically, it is proper in this case to issue a permanent injunction that (a) prohibits the Defaulting Defendants from marketing or selling secured or unsecured debt relief products or services; (b) prohibits the Defaulting Defendants from engaging in telemarketing; (c) prohibits the Defaulting Defendants from using false, fictitious, or fraudulent statements to obtain or attempt to obtain customer information of a financial institution; (d) prohibits the Defaulting Defendants from engaging in various types of misrepresentations and other deceptive conduct; (e) prohibits the Defaulting Defendants from providing consumers with documents consummating a sale of a product or service in a language different from the one used when offering such product or service for sale to the consumer; (f) provides other reasonable fencing-in relief; and (g) provides such other ancillary relief necessary to assist the FTC and the Court in monitoring the Defaulting Defendants' compliance with such a permanent injunction.

28.    Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), authorize this Court "to grant such relief as the [C]ourt finds necessary to redress injury to consumers" resulting from the Defaulting Defendants' violations of the TSR and Section 521 of the GLB Act, including "the refund of money or return of property." 15 U.S.C. § 57b(b).

29.     No hearing is necessary for the Court to make a determination with respect to monetary relief, as such relief is established through undisputed evidence already submitted to the Court. The undisputed evidence demonstrates that the Defaulting Defendants have caused $7,304,737.29 in consumer harm from their violations of the TSR and Section 521 of the GLB Act within the three-year statute of limitations under Section 19 of the FTC Act, 15 U.S.C. § 57b(d).

30.     It is proper in this case to enter a monetary judgment pursuant to Section 19 of the FTC Act, 15 U.S.C. § 57b, against the Defaulting Defendants to redress consumer injury caused by the Defaulting Defendants' violations of the TSR and Section 521 of the GLB Act. The Court has already entered a monetary judgment in favor of the FTC against the other Defendants—Start Connecting LLC, Douglas R. Goodman, and Doris E. Gallon-Goodman—in the amount of $7,304,737.29, jointly and severally. *See* (Docs. 201, 203). The FTC is entitled to a monetary judgment against the Defaulting Defendants in the amount of $7,304,737.29, jointly and severally with each other as well as the other Defendants against whom judgment has already been entered.

31.     It is proper in this case to temporarily continue the receivership over Defendant Start Connecting SAS as provided in this Order.

32.     The action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil

16

and criminal remedies.

33.     Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are binding upon each Defaulting Defendant, their successors and assigns, and their officers, agents, employees, and attorneys, and upon those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise.

34.     Entry of this Order is in the public interest.

### DEFINITIONS

For purposes of this Order, the following definitions shall apply:

A.     **"Assisting Others"** includes: (a) performing customer service functions, including receiving or responding to consumer complaints; (b) formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication; (c) formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services; (d) providing names of, or assisting in the generation of, potential customers; (e) performing marketing, billing, payment processing, or payment services of any kind; or (f) acting or serving as an owner, officer,

17

Case 8:24-cv-01626-KKM-AAS    Document 217    Filed 10/17/25    Page 18 of 37 PageID
4375


director, manager, or principal of any entity.

B.    **"Consumer Review"** means a consumer's evaluation, or a purported consumer's evaluation, of a product, service, or business that is submitted by the consumer or purported consumer and that is published to a website or platform dedicated in whole or in part to receiving and displaying such evaluations.

C.    **"Consumer Testimonial"** means an advertising or promotional message (including verbal statements, demonstrations, or depictions of the name, signature, likeness, or other identifying personal characteristics of an individual) that consumers are likely to believe reflects the opinions, beliefs, or experiences of a consumer who has purchased, used, or otherwise had experience with a product, service, or business.

D.    **"Defendant(s)"** means the Corporate Defendants Start Connecting LLC and Start Connecting SAS, and each of their subsidiaries, affiliates, successors, and assigns, as well as Individual Defendants Douglas R. Goodman, Doris E. Gallon-Goodman, and Juan S. Rojas, individually, collectively, or in any combination.

i.    **"Corporate Defendant(s)"** means Start Connecting LLC and Start Connecting SAS—each of which also do business under the name USA Student Debt Relief—and each of their subsidiaries, affiliates, successors, and assigns.

ii. **"Defaulting Defendant(s)"** means Defendant Start Connecting SAS—including each of its subsidiaries, affiliates, successors, and assigns—and Juan S. Rojas, individually, collectively, or in any combination.

iii. **"Defaulting Corporate Defendant"** means Start Connecting SAS and each of its subsidiaries, affiliates, successors, and assigns.

iv. **"Defaulting Individual Defendant(s)"** means Juan S. Rojas.

v. **"Settling Defendant(s)"** means Start Connecting LLC—and each of its subsidiaries, affiliates, successors, and assigns—as well as Douglas R. Goodman and Doris E. Gallon-Goodman, individually, collectively, or in any combination.

E. **"Fake Indicators of Social Media Influence"** means indicators of social media influence generated by bots, purported individual accounts not associated with a real individual, accounts created with a real individual's personal information without their consent, or hijacked accounts, or that otherwise do not reflect a real individual's or entity's activities, opinions, findings, or experiences.

F. **"Non-Party Receivership Entity(ies)"** means Zage Group, LLC, G&G International Consultants SAS, LEADSR4US, LLC, and any other non-party entity that has conducted any business related to Defendants' student loan debt relief services business, including receipt of assets derived

from any activity that is the subject of the Complaint in this matter, and which the Receiver has reason to believe is owned or controlled in whole or in part by any Defendant.

G.    **"Person"** means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

H.    **"Receiver"** means Jared J. Perez.

I.    **"Receivership Entity(ies)"** means the Corporate Defendant(s), as well as Zage Group, LLC; G & G International Consultants SAS; LEADSR4US, LLC; and any other entity that has conducted any business related to Defendants' student loan debt relief services business, including receipt of assets derived from any activity that is the subject of the Complaint in this matter, and which the Receiver has reason to believe is owned or controlled in whole or in part by any Defendant.

J.    **"Secured or Unsecured Debt Relief Product or Service"** means:

    i. With respect to any mortgage, loan, debt, or obligation between a Person and one or more secured or unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

        a. Stop, prevent, or postpone any mortgage or deed of

foreclosure sale for a Person's dwelling, any other sale of collateral, any repossession of a Person's dwelling or other collateral, or otherwise save a Person's dwelling or other collateral from foreclosure or repossession;

b.    Negotiate, obtain, or arrange a modification, or renegotiate, settle, reduce, or in any way alter any terms of the mortgage, loan, debt, or obligation, including a reduction in the amount of interest, principal balance, monthly payments, or fees owed by a Person to a secured or unsecured creditor or debt collector;

c.    Obtain any forbearance or modification in the timing of payments from any secured or unsecured holder or servicer of any mortgage, loan, debt, or obligation;

d.    Negotiate, obtain, or arrange any extension of the period of time within which a Person may (i) cure his or her default on the mortgage, loan, debt, or obligation; (ii) reinstate his or her mortgage, loan, debt, or obligation; (iii) redeem a dwelling or other collateral; or (iv) exercise any right to reinstate the mortgage, loan, debt, or obligation or redeem a dwelling or other collateral;

e.    Obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral; or

    f.    Negotiate, obtain, or arrange (i) a short sale of a dwelling or other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a mortgage, loan, debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder. The foregoing shall include any manner of claimed assistance, including auditing or examining a Person's application for the mortgage, loan, debt, or obligation.

  ii.  With respect to any loan, debt, or obligation between a Person and one or more unsecured creditors or debt collectors, any product, service, plan, or program represented expressly or by implication to:

    a.  Repay one or more unsecured loans, debts, or obligations; or

    b.  Combine unsecured loans, debts, or obligations into one or more new loans, debts, or obligations.

K.    **"Telemarketing"** means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, whether or not covered by the Telemarketing Sales Rule.

### ORDER

## I.    BAN ON SECURED OR UNSECURED DEBT RELIEF PRODUCTS AND SERVICES

**IT IS ORDERED** that the Defaulting Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from

advertising, marketing, promoting, offering for sale, selling, or Assisting
Others in the advertising, marketing, promoting, offering for sale, or selling,
any Secured or Unsecured Debt Relief Product or Service.

## II.    BAN ON TELEMARKETING

**IT IS FURTHER ORDERED** that the Defaulting Defendants, whether
acting directly or indirectly, are permanently restrained and enjoined from
participating in Telemarketing or Assisting Others engaged in Telemarketing,
including by consulting, brokering, planning, investing, or advising others
regarding Telemarketing.

## III.    PROHIBITED BUSINESS ACTIVITES

**IT IS FURTHER ORDERED** that the Defaulting Defendants and their
officers, agents, employees, and attorneys, and all other Persons in active
concert or participation with any of them, who receive actual notice of this
Order, whether acting directly or indirectly, in connection with advertising,
marketing, promoting, offering for sale, or selling of any product or service, are
permanently restrained and enjoined from engaging in, or Assisting Others
engaged in, the following:

A.    Misrepresenting, expressly or by implication:

1.    That any Person is affiliated with, endorsed or approved by, or
otherwise connected to any other Person; government entity;
public, nonprofit, or other noncommercial program; or any other

program;

2. The nature, expertise, position, or job title of any Person who provides any product, service, plan, or program;

3. Any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

4. The ability to improve or otherwise affect a consumer's credit record, credit history, credit rating, or ability to obtain credit, including that a consumer's credit record, credit history, credit rating, or ability to obtain credit can be improved by permanently removing negative information from the consumer's credit record or history even where such information is accurate and not obsolete;

5. That a consumer will save money;

6. That any Consumer Review or Consumer Testimonial is truthful or by an actual user of such product or service; or

7. Any other fact material to consumers concerning any good or service, such as the total costs; any restrictions, limitations, or conditions; or any aspect of its performance, efficacy, nature, or

central characteristics;

B.      Representing, expressly or by implication, the benefits, performance, or efficacy of any product or service, unless the representation is non-misleading and, at the time such representation is made, the Defaulting Defendants possess and rely upon competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true;

C.      Paying or otherwise providing incentives for any Consumer Review or Consumer Testimonial;

D.      Using or disseminating any Consumer Review or Consumer Testimonial where there is a relationship between the author of the Review or Testimonial and any Defaulting Defendant that might materially affect the weight or credibility of the Review or Testimonial;

E.      Purchasing or procuring Fake Indicators of Social Media Influence;

F.      Providing consumers with documents consummating a sale of a product or service in a language different from the one used when offering such product or service for sale to the consumer; or

G.      Obtaining or attempting to obtain, or causing to be disclosed or attempting to cause to be disclosed, customer information of a financial institution—including bank account routing number, credit or debit card

information, loan information, or login credentials—by making false fictitious,
or fraudulent representations to any consumer or financial institution.

## IV.    MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.    Judgment in the amount of Seven Million, Three Hundred Four
Thousand, Seven Hundred Thirty-Seven Dollars and Twenty Nine Cents
($7,304,737.29) is entered in favor of the Commission against the Defaulting
Defendants, jointly and severally with the judgment previously entered
against Settling Defendants, *see* (Docs. 201, 203), as monetary relief.

B.    The monetary judgment set forth in Section IV.A is enforceable
against any asset, real or personal, whether located within the United States
or outside the United States, owned jointly or singly by, on behalf of, for the
benefit of, in trust by or for, or as a deposit for future goods or services to be
provided to, any Defaulting Defendant, whether held as tenants in common,
joint tenants with or without the right of survivorship, tenants by the entirety,
and/or community property.

C.    In partial satisfaction of the judgment set forth in Section IV.A,
any Defendant, financial institution, or any other Person, whether located
within the United States or outside the United States, that holds, controls, or
maintains assets or accounts in the name of, on behalf of, for the benefit of, in
trust by or for, or as a deposit for future goods or services to be provided to any

Receivership Entity shall, within ten (10) business days of receipt of a copy of this Order, transfer to the Receiver or his designee such account or asset, including:

    a. Banco Bilbao Vizcaya Argentaria, including any of its subsidiaries or affiliates, shall liquidate and transfer to the Receiver or his designated agent all holdings in:

        i. Account number xxxxx5160 in the name of Start Connecting SAS;

        ii. Account number xxxxx5502 in the name of Start Connecting SAS;

        iii. Account number xxxxx1421 in the name of Start Connecting SAS;

        iv. Account number xxxxx3111 in the name of G&G International Consultants SAS;

    b. Banco Davivienda S.A., including any of its subsidiaries or affiliates, shall liquidate and transfer to the Receiver or his designated agent all holdings in:

        i. Account number xxxxx4502 in the name of Start Connecting SAS; and

    c. Bancolombia S.A., including any of its subsidiaries or affiliates, shall liquidate and transfer to the Receiver or his designated agent

all holdings in:

     i.   Account number xxxxx3381 in the name of G&G International Consultants SAS.

D.    Any financial or brokerage institution, payment processor, escrow agent, title company, commodity trading company, business entity, or Person, whether located within or outside the United States, that holds, controls, or maintains accounts or assets of, on behalf of, or for the benefit of, any Defaulting Individual Defendant, whether real or personal whether located within or outside the United States, shall, within ten (10) days from receipt of a copy of this Order, turn over such accounts or assets to the FTC or its designated agent, including:

    a.   Bancolombia S.A., including any of its subsidiaries or affiliates, shall liquidate and transfer to the FTC or its designated agent all holdings in:

        i.   Account number xxxxx0026 in the name of Juan Sebastian Hernan Rojas Gallon;

    b.   Banco Bilbao Vizcaya Argentaria, including any of its subsidiaries or affiliates, shall liquidate and transfer to the FTC or its designated agent all holdings in:

        i.   Account number xxxxx5392 in the name of Juan Sebastian Rojas Gallon.

28

E.    The asset freeze imposed by the Preliminary Injunction Order as to the Defaulting Defendants, (Doc. 78), is modified to permit the transfers and liquidations specified in this Section. Upon completion of those transfers and liquidations, the asset freeze is dissolved.

## V.    ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.    The Defaulting Defendants' Employer Identification Number, Social Security Number, or other Taxpayer Identification Number ("TIN"), including all TINs that Defaulting Defendants previously provided, may be used by the Commission for reporting and other lawful purposes, including collecting on any delinquent amount arising out of this Order in accordance with 31 U.S.C. § 7701.

B.    All money received by the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed, the Commission may apply any remaining money for such related relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. The Defaulting Defendants have no right to

challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VI.   CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that the Defaulting Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.     Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, the Defaulting Defendants must provide it, in the form prescribed by the Commission, within 14 days;

B.     Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security number, FSA ID, other identifying information, or any data that enables access to a customer's account (including a credit card, bank, or other financial account) that any Defendant obtained prior to entry of this Order in connection with the marketing and sale of Secured or Unsecured Debt Relief Products or Services; and

C.     Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receiving written direction

to do so from a representative of the Commission.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VII.   CONTINUATION OF RECEIVERSHIP

**IT IS FURTHER ORDERED** that Jared J. Perez shall continue as a permanent receiver over the Receivership Entities with full powers of a permanent receiver, including those powers set forth in the Preliminary Injunction Order as to the Defaulting Defendants, (Doc. 78), as well as full liquidation powers. The Receiver is directed to wind up the Receivership Entities and liquidate all assets within 180 days after entry of this Order. Any party or the Receiver may request that the Court extend the Receiver's term for good cause. Upon termination of the receivership and final payment to the Receiver of all approved fees, costs, and expenses, the Receiver shall turn over to the FTC or its designated agent all remaining assets in the receivership estate.

## VIII. ORDER ACKNOWLEDGEMENTS

A.    **IT IS FURTHER ORDERED** that, for 20 years after entry of this Order, the Defaulting Individual Defendant, for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and the Defaulting Corporate

Defendant, must deliver a copy of this Order to (1) all principals, officers, directors, and limited liability company managers and members; (2) all employees having managerial responsibilities for conduct specified in Sections I–III of this Order and all agents and representatives who participate in conduct specified in Sections I– III of this Order; and (3) any business entity resulting from any change in structure as set forth in Section IX of this Order. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

## IX.    COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defaulting Defendants make timely submissions to the Commission:

A.    One year after entry of this Order, each Defaulting Defendant must submit a compliance report, sworn under penalty of perjury:

    a. Each Defaulting Defendant must (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with the Defaulting Defendant; (b) identify all of that Defaulting Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing,

and sales, and the involvement of any other Defendant (which the Defaulting Individual Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Defaulting Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

b. Additionally, the Defaulting Individual Defendant must (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which the Defaulting Individual Defendant performs services, whether as an employee or otherwise, and any entity in which the Defaulting Individual Defendant has any ownership interest; and (c) describe in detail the Defaulting Individual Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.    For 20 years after entry of this Order, each Defaulting Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

a. Each Defaulting Defendant must report any change in (a) any

33

designated point of contact; or (b) the structure of the Defaulting Corporate Defendant or any entity that any Defaulting Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including the creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

b.  Additionally, the Defaulting Individual Defendant must report any change in (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which the Defaulting Individual Defendant performs services whether as an employee or otherwise and any entity in which the Defaulting Individual Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.  Each Defaulting Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defaulting Defendant within 14 days of its filing.

D.  Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under

34

the laws of the United States of America that the foregoing is true and correct.
Executed on: _____" and supplying the date, signatory's full name, title (if
applicable), and signature.

E.    Unless otherwise directed by a Commission representative in
writing, all submissions to the Commission pursuant to this Order must be
emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal
Service) to: Associate Director for Enforcement, Bureau of Consumer
Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW,
Washington, DC 20580. The subject line must begin: *FTC v. Start Connecting
LLC*, Matter No. X250003.

## X.    RECORDKEEPING

**IT IS FURTHER ORDERED** that the Defaulting Defendants must
create certain records for 20 years after entry of the Order, and retain each
such record for 5 years. Specifically, the Defaulting Corporate Defendant and
the Defaulting Individual Defendant, for any business that such Defendant,
individually or collectively with any other Defendants, is a majority owner or
controls directly or indirectly, must create and retain the following records:

A.    Accounting records showing the revenue from all goods or services
sold;

B.    personnel records showing, for each person providing services,
whether as an employee or otherwise, that person's: name; addresses;

telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.    all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.    a copy of each unique advertisement or other marketing material.

## XI.    COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring the Defaulting Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the Commission, each Defaulting Defendant must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including depositions by remote means), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the Commission is authorized to communicate directly with each Defaulting Defendant. The Defaulting

Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Defaulting Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.    The Commission may use all other lawful means, including posing through its representatives as consumers, suppliers, or other individuals or entities, to Defaulting Defendants or any individual or entity affiliated with Defaulting Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.    Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning the Defaulting Individual Defendant, pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

**ORDERED** in Tampa, Florida, on October 17, 2025.


Kathryn Kimball Mizelle
United States District Judge