# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.                         Case No: 8:24-cv-1626-KKM-AAS

START CONNECTING LLC, et al.,

     Defendants.

_____

## <u>ORDER</u>

The FTC brought this civil enforcement action against operators of a deceptive student debt relief scheme and the Court appointed Jared Perez as Receiver over the operators and their assets. (Docs. 13, 69, 78). Hamlet Garcia, Jr., a nonparty, moved to intervene, purportedly because he operated a student loan business impacted by the FTC action. (Doc. 105). Garcia's motion to intervene was stricken for noncompliance with local rules, (Doc. 107), and I imposed a prefiling injunction against him for filing frivolous documents and making inappropriate communications with the Court, (Doc. 156).

Since then, Garcia sued the Receiver in state court for defamation based on consumer warning language the Receiver posted online. The Receiver moves to enjoin the state court proceeding, to bar Garcia from suing him without permission from this Court, and for an order to show cause why Garcia should

not be held in contempt for violating court orders. (Doc. 179). Garcia opposes, but the FTC and participating defendants do not. *Id.* at 26. Because I largely agree that Garcia's actions and state court suit violate this Court's order and interfere with the Receiver's duties, I grant the motion in part.

## I.    BACKGROUND

After this Court appointed Perez as Receiver on a temporary basis, the FTC and certain defendants stipulated that good cause existed to believe defendants Douglas Goodman, Doris Gallon-Goodman, Juan Rojas, Start Connecting LLC, and Start Connecting SAS engaged in practices that violate federal consumer protection laws. PI (Doc. 69) at 2–3. Accordingly, this Court entered a Preliminary Injunction directing that Perez "shall continue to serve as the Receiver" for all defendants,[1] who "shall be solely the agent of this Court in acting as Receiver under this Order." *Id.* at 23.

The Preliminary Injunction gave Perez significant authority as Receiver. As relevant here, the Receiver was directed to "[a]ssume full control of the" defendant entities, "[t]ake exclusive custody, control, and possession of all Assets and Documents[2] of, or in the possession, custody, or under the control

---

[1] Defendants Juan Rojas and Start Connecting SAS failed to timely respond, and so the Court entered a separate Preliminary Injunction without their stipulation. (Doc. 78). For purposes of this order, that injunction's material provisions are identical to the previously entered Preliminary Injunction at (Doc. 69).

[2] Documents include "Internet sites, web pages, [and] websites." PI at 5.

of [defendants]," and to "determine, adjust, and protect the interests of consumers who have transacted business with the [defendants]." *Id.* at 23–25. Perez was likewise authorized to "[i]nstitute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal, or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the [defendants], or to carry out the Receiver's mandate under this Order." *Id.* at 28. In step with Perez's responsibilities, both defendants and "non-party Receivership Entities[3] who receive actual notice of [the Preliminary Injunction] shall fully cooperate with and assist the Receiver." *Id.* at 33.

Additionally, the Preliminary Injunction prohibits defendants and certain non-parties from "[i]nterfering with the Receiver's efforts to manage or take custody, control, or possession of the Assets or Documents subject to the receivership" and "[r]efusing to cooperate with the Receiver . . . in the exercise of [his] duties or authority under any order of this Court." *Id.* at 34. And "[e]xcept by leave of this Court, during the pendency of the receivership ordered herein," defendants and "all other persons in active concert or

---

[3] Non-Party Receivership Entities include "any other entity that has conducted any business related to Defendants' marketing of Debt Relief Services, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant, but that is not itself a Defendant in this matter." PI at 6.

3

participation with any of them, who receive actual notice of this [Preliminary Injunction]," are enjoined from "taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities," including by "[c]ommencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the" Receivership Entities. *Id.* at 35. Likewise, such individuals cannot "attempt[] to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise." *Id.*

After receiving a tip and investigating a company called Student Solution Services (SSS), the Receiver determined that SSS targeted consumers in cooperation with other defendants. (Doc. 151) at 8–12. Although the Receiver declined to expand the Receivership to cover SSS, he published the following statement on the Receivership website:

> The Receiver and his professionals have recently learned that some of the same individuals who perpetrated the USA Student Debt Relief scam are still targeting customers and prospective customers for illegal, misleading, and unnecessary "services" using new corporate names. **<u>Beware any communications from companies called Student Solution Service[s] . . . .</u>**

(Doc. 151), https://perma.cc/4Z3H-3CYZ.

The Receiver and the FTC then began an investigation into SSS, prompting purported founder and operator Hamlet Garcia to move to intervene

in the present action. (Doc. 105). Garcia's motion was first stricken for noncompliance with the local rules, (Doc. 107), and he refused to comply with the local rules and filed over 26 frivolous documents, (Docs. 105, 106, 108, 109, 111, 112, 113, 115, 117, 118, 120, 121, 122, 123, 129, 133, 134, 136, 137, 148, 149, 150, 152, 153, 154, 155). Garcia then emailed members of the Court before I "barred [him] from submitting any documents in this case absent the signature of counsel admitted to the Middle District of Florida bar."[4] (Doc. 156). Garcia nonetheless continued to file frivolous documents. *See* Declaration of Primordial Standing & Superior Claim (Doc. 159); *see also* Declaration and Notice of Jurisdictional Preemption and Recognition Exemption (Doc. 160). Likewise, the Receiver alleges that Garcia sent him frivolous and threatening emails, even calling the Tampa Police Department to perform a "wellness check" when the Receiver did not immediately respond. *See* (Doc. 179-1) at 22–24; (Doc. 179-3) at 2–4.

In addition to filing on the federal docket and contacting the Receiver directly, Garcia sued the receiver in small claims court for Pinellas County, alleging that the receiver defamed him by posting the consumer warning

---

[4] Garcia moved to appeal *in forma pauperis* the orders striking filings, denying his motion to intervene, warning of sanctions, and imposing the prefiling injunction. (Doc. 167). I denied that motion because Garcia's appeal was "not taken in good faith," (Doc. 168), and the Eleventh Circuit did the same, concluding that Garcia's appeal "presents no issue of arguable merit," (Doc. 215).

language about SSS online. *See Garcia v. Perez*, Case No. 25-003322-SC (Fla. 6th Cir. filed Apr. 3, 2025). The Receiver moved to continue the case, and the court granted the motion—plus "further extensions"— "to allow for a ruling by [this Court] on" the present motion. *See* (Doc. 193–1) at 1–2. The state court "will entertain a motion to dismiss this case, if appropriate, based on the contents of the federal court order, among other potential arguments." *Id.* at 2. The receiver now moves for sanctions and to enjoin Garcia from prosecuting the state court defamation action.[5]

## II.    LEGAL STANDARD

The Court has an obligation "to protect [its] jurisdiction from conduct which impairs [its] ability to carry out Article III functions," *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) (en banc) (per curiam), and is "authorized to restrict access to vexatious and abusive litigants," *Brewer v. United States*, 614 F. App'x 426, 427 (11th Cir. 2015) (per curiam), to carry out this responsibility. In doing so, courts "possess inherent power to enforce compliance with their lawful orders through civil contempt." *Citronelle–Mobile*

---

[5] Since the Receiver filed the present motion, "Garcia immediately filed another state court action seeking a declaratory judgment limiting this Court's jurisdiction." Reply (Doc. 191) at 1 n.1; *see also* (Doc. 180) (providing notice of a related case, *Garcia v. Judicial Threats to Interstate Access to Florida Courts*, Case No. 25-001864-CI (Fla. Cir. Ct. filed Apr. 12, 2025)). Although it is unclear whether Garcia seeks to name the Receiver or Receivership entities as defendants, he has served no one and his petition is due to be dismissed. *See* Doc. (216). The Receiver nonetheless asks to "include the second action in its order on the [present] Motion." Reply at 1 n.1.

*Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).

"A finding of civil contempt—willful disregard of the authority of the court—must be supported by clear and convincing evidence." *Riccard v. Prudential Ins.*, 307 F.3d 1277, 1296 (11th Cir. 2002) (citing *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000)). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Id.* If that burden is met, "[s]anctions in civil contempt proceedings may be employed . . . to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *FTC v. Leshin*, 719 F.3d 1227, 1235 (11th Cir. 2013) (quoting *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986)). Courts retain broad discretion in fashioning sanctions and may impose, for example, "a coercive daily fine, a compensatory fine, attorneys' fees and expenses . . . and coercive incarceration." *Citronelle–Mobile*, 943 F.2d at 1304.

## III.  ANALYSIS

As he puts it, the Receiver requests relief that "represent[s] two sides of the same coin." Mot. at 12. The Receiver asks that Garcia be sanctioned for violating this Court's Preliminary Injunction by suing the Receiver without leave and for generally harassing the Receiver and his agents. *Id.* at 1–5. But,

"because Garcia is unlikely to voluntarily comply with any such order" insofar as it directs Garcia to dismiss the state court action, the Receiver also asks this Court to directly enjoin the state court defamation action under the All Writs Act. Mot. at 13. Because I agree that Garcia interfered with and sued the Receiver in violation of the Preliminary Injunction, I grant the Receiver's motion in part. Provided Garcia complies with my direction or the state court dismisses the defamation action, I leave for another day the question of this Court's authority to directly enjoin the state court actions.

### A. Garcia is Subject to this Court's Preliminary Injunction, and He Failed to Comply with its Directives by Contacting the Receiver and Suing Him Without Leave

The Receiver and Garcia initially disagree about whether this Court has power to enforce the Preliminary Injunction against Garcia. And assuming it does, they also dispute whether Garcia's actions—particularly in filing the state court defamation action—violated the injunction's terms. I answer both questions in the affirmative.

### i.    Garcia is Bound by the Preliminary Injunction

To start, it is well settled that "the court that enters an injunctive order retains jurisdiction to enforce its order." *Alderwoods Grp., Inc. v. Garcia,* 682 F.3d 958, 970 (11th Cir. 2012). More, "the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order," *id.*, provided the order was "lawful and valid" and "clear and

8

unambiguous," *Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007).
That principle applies with equal force to court orders appointing receivers, in
which the appointing court has both "broad powers and wide discretion to
determine relief" in the first instance and retains nearly exclusive jurisdiction
over the receivership. *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992).

Here, Garcia does not persuade that he falls outside the Preliminary
Injunction's "lawful and valid" ambit. The Preliminary Injunction's non-
interference and stay provisions apply to defendants "and all other persons in
active concert or participation with any of them, who receive actual notice of
this Order." PI at 35 § XVII. Garcia now suggests that his "defamation action
is a personal tort claim, not a coordinated effort" and so cannot be enjoined.
Resp. (Doc. 184) at 6. But that misreads the Preliminary Injunction, which
*applies* to those in "active concert" with defendants; it does not matter whether
the prohibited action was also done collaboratively. PI at 35 § XVII. In any
event, Garcia's own statements establish his relationship with defendants. He
repeatedly expressed that he was working with the enjoined defendants,
perhaps as an "agent." *See, e.g.*, PI at 35 § XVII (applying also to defendants'
"agents"). For example, Garcia described himself as a "creditor and
stakeholder" with "exclusive ownership and intellectual property rights
related to USA Student Debt Relief," and averred that a named defendant
"contracted [him] for the full-scale development, design, and launch of a fully

functional website. *See* (Doc. 191-1) at 2, 11–13, 15–16, 17, 23, 27; *see also* (Doc. 151) at 12 (FTC and Receiver investigative report concluding that defendants' employees "were sending what appear to be template emails, scripts, and other documents to SSS email addresses."). Those admissions bring Garcia within scope.

And Garcia had actual notice; the Receiver emailed him a copy of the Preliminary Injunction in November 2024, to which Garcia responded that "[t]he scope of the injunction under Rule 65(d)(2)(C), including obligations regarding document preservation, cooperation with the Receiver, and adherence to prohibitions, is understood." (Doc. 177-3) at 2; *see also* PI at 40 § XXIII (permitting service by "electronic mail"). Since then, the Receiver also warned Garcia that if he "sues the Receiver . . . in a separate action, the Receiver will . . . seek . . . enforcement of the Court's injunction against ancillary litigation, dismissal of the competing action, and the imposition of harsh sanctions against Garcia." (Doc. 151) at 36–38.

Although Garcia now states that "no order was directed at [his] conduct," or "served with the clarity required to support contempt," Garcia Decl. (Doc. 184-1) at 2–3, his previous representations contradict that claim. As do the straightforward commands of the Preliminary Injunction. *See, e.g.*, *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296–97 (11th Cir. 2002) (concluding injunction prohibiting filing any new "action, complaint, or claim for relief"

against "Prudential, its affiliates, or subsidiaries [in] federal court, state court, or any other forum" was unambiguous where it was "issued in part to prevent further harassment of Prudential."). I thus conclude that the non-interference and stay provisions of the Preliminary Injunction are "clear and unambiguous" and bind Garcia.

### ii.    Garcia's actions—both inside and outside of court—violate the plain terms of the Preliminary Injunction

Next, Garcia violated multiple provisions of the Preliminary Injunction by harassing the Receiver and suing him for defamation in state court. First, Garcia impermissibly "[i]nterfer[ed] with the Receiver's efforts to manage . . . the Assets or Documents subject to the receivership" and "[r]efused to cooperate with the Receiver" in the exercise of his duties. PI at 34. As relevant here, the Receiver was authorized to warn customers and potential customers of SSS's deceptive marketing practices. *See id.* at 28 ¶ K (directing the Receiver to "protect the interests of consumers who have transacted business with . . . any non-party Receivership Entity"). And because the Receiver determined that defendants' "operations cannot be continued legally and profitably," (Doc. 151) § V, he "t[ook] all steps necessary to ensure . . . [defendants' and non-party] web pages . . . relating to the activities alleged in the Complaint . . . are

modified for consumer education and/or informational purposes" by posting the consumer warning language about SSS on the modified website. PI at 30 ¶ V.

Displeased with that statement and the FTC action more broadly, Garcia sent the Receiver nearly 80 frivolous—and sometimes threatening—emails, even calling the police to conduct a "welfare check" when the Receiver did not immediately respond. *See* (Doc. 179-2); (Doc. 151) at 37 n.20. Garcia's harassing communications necessarily impeded the Receiver's ability to carry out his court-ordered responsibilities, one of which expressly authorized posting the purportedly defamatory statement.

Second, Garcia improperly sued the Receiver without leave. Garcia was prohibited from doing so by the Preliminary Injunction and the related *Barton* doctrine. The Preliminary Injunction dictates that "[e]xcept by leave of this Court," Garcia—by virtue of operating "in active concert or participation" with defendants and "receiv[ing] actual notice of [the injunction]"— "[is] hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities." PI at 35 § XVII. That includes "[c]ommencing, prosecuting, or continuing a judicial . . . action or proceeding against the Receivership Entities," or "attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, whether such acts are part of a judicial proceeding

12

. . . ." *Id.* Again, Garcia claimed to have "understood" these obligations. (Doc. 177-3) at 2.

In *Barton v. Barbour*, 104 U.S. 126, 127 (1881), the Supreme Court also explained that "[i]t is a general rule that before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." Without leave, a court lacks jurisdiction "to entertain a suit against him for a cause of action arising in the State in which he was appointed and in which the [receivership] property in his possession is situated." *Id.* at 137; *see Porter v. Sabin*, 149 U.S. 473, 480 (1893) ("Until the administration of the estate has been completed and the receivership terminated, no court of the one government can by collateral suit assume to deal with rights of property or of action, constituting part of the estate within the exclusive jurisdiction and control of the courts of the other."). Although the *Barton* doctrine "is grounded in the exclusive nature of *in rem* jurisdiction," in which "the court, whether federal or state, which first takes possession of a *res* withdraws the property from the reach of the others,"[6] *Chua v. Ekonomou*, 1 F.4th 948, 954 (11th Cir.

---

[6] The parties discuss two exceptions to the *Barton* doctrine which do not apply here. First, a plaintiff may pursue suit against "receivers or managers of any property . . . without leave of the court appointing them, with respect to any of their acts or transactions in carrying on the business connected with such property." 28 U.S.C. § 959(a). There's no suggestion that the Receiver warned consumers about SSS as part of "carrying on the business" of the other deceptive operators. Second, the Supreme Court recognized an "ultra vires" exception—"if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver

2021) (internal quotation marks omitted), "it is immaterial whether the suit is brought against [the receiver] to recover specific property or to obtain judgment for a money demand," *Barton*, 104 U.S. at 126. Likewise, leave "is required before pursuing remedies in either state or other federal courts." *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir. 2000).

Here, without seeking leave, Garcia filed a defamation action against the Receiver seeking $5,000 in damages and retraction of the Receivership website's warning language. True, Garcia did not name "the Receivership Entities" as defendants, but he challenges an action taken by the Receiver in "full control" of the Receivership Entities and "exclusive custody, control, and possession of all [their] Assets and Documents." PI at 24–25. His requests also "interfere" with this Court's jurisdiction because the Receiver must "defend . . . any legal action . . . [he] deems necessary and advisable to preserve or recover the Assets of the [defendants] or any non-party Receivership Entity, or to carry out the Receiver's mandate under this Order." *Id.* at 28 ¶ M; *see* (Doc. 174) (explaining that "if Garcia files a lawsuit that implicates the Receiver and/or the Receivership, the defense of that lawsuit will necessarily reduce the funds available for consumer restitution"). Other courts have recognized that similar

---

would be acting ultra vires." *Barton*, 104 U.S. at 134. Because the Preliminary Injunction ordered the Receiver to protect customers and "modify" its relevant webpage, this exception also does not apply to Garcia's suit.

actions filed directly against a receiver infringe on the appointing court's
jurisdiction over receivership assets. *Liberte Cap. Grp., LLC v. Capwill*, 462
F.3d 543, 551–52 (6th Cir. 2006) ("The receivership court has a valid interest
in both the value of the claims themselves and the costs of defending any suit
as a drain on receivership assets."); *United States v. Acorn Tech. Fund, LP*, 429
F.3d 438, 443 (3d Cir. 2005) (explaining that the appointing court must afford
the receiver "a chance to do the important job of marshaling and untangling a
company's assets without being forced into court by every investor or
claimant"). That's particularly true here, where forcing the Receiver to defend
may "alter[] or terminate any interest in any Asset of the Receivership
Entities," namely the funds eligible to compensate aggrieved consumers.
Finally, Garcia's action threatens this Court's jurisdiction over "Documents,"
principally the Receivership website, a domain purchased and maintained
with Receivership assets. (Doc. 179-1) at 1–4; (Doc. 88-3) (seeking
reimbursement of expenses); (Docs. 94, 98) (awarding reimbursement).

### B. Garcia Must Dismiss the State Court Actions or Risk Sanctions for Noncompliance

With Garcia's violations of the Preliminary Injunction established, I turn
to the appropriate remedy. Alleging that Garcia "willfully violated the
Preliminary Injunctions and the Supreme Court's 150-year old '*Barton*
Doctrine,' " the Receiver requests an order "requiring Garcia to dismiss the

Defamation Action with prejudice," "expressly and permanently enjoining the continued prosecution of the Defamation Action," and requiring Garcia to pay fees and costs associated with defending the action. Mot. at 1–3. In response, Garcia asserts that no injunction can issue because his "defamation action is a legitimate exercise of state court jurisdiction, protected by the Anti-Injunction Act." Resp. at 8. Although Garcia's position is doubtful,[7] I order him to dismiss the action but do not directly enjoin the state court proceedings.

In the regular course, "[t]he question of whether to stay proceedings in a state court is never one to be taken lightly, as it impinges on the very delicate balance struck between the federal and state judicial systems." *Wesch v. Folsom*, 6 F.3d 1465, 1469 (11th Cir. 1993). To that end, the Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. While the Act does not prohibit injunctions that would "hamstring the Federal Government and its agencies in the use of federal courts to protect federal rights," *NLRB v. Nash-Finch Co.*,

---

[7] The All Writs Act, 28 U.S.C. § 1651, permits—and the Anti–Injunction Act does not prohibit—the "issuance of an injunction that bars an enjoined party from filing or maintaining a new frivolous state court claim." *Cuyler v. Presnell*, 6:11–CV–623–0RL–22, 2011 WL 5525372, at *1 (M.D. Fla. Nov. 14, 2011) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 484 n.2 (1965)).

404 U.S. 138, 146 (1971), the Act otherwise serves as "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [the] three specifically defined exceptions," *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970), which courts must construe narrowly, *Burr & Forman v. Blair*, 470 F.3d 1019, 1028 (11th Cir. 2006).

To be sure, courts have upheld injunctions under the second exception in two distinct situations, which the Receiver argues exist here. First, a federal court may enjoin a state court action "where the federal court in an *in rem* proceeding obtains jurisdiction over the *res* before the state court action involving the same *res* is brought." *Id.* (citing *In re Abraham*, 421 F.2d 226, 228 (5th Cir. 1970)). Second, courts have sustained orders "in contexts roughly analogous to proceedings *in rem,* such as where enjoining the state court proceeding is necessary to protect an earlier federal court injunction." *Id.* So while I agree with the Receiver that there is a strong case for enjoining the state court proceedings,[8] the Receiver's more limited ask that Garcia dismiss the action obviates grappling with the federal-state tensions at play.

---

[8] I observe also that numerous district courts have done so "in the context of cases brought by the FTC," especially where the FTC is the movant. *FTC v. 4 Star Resol., LLC*, No. 15-CV-112S, 2016 WL 4138229, at *3 (W.D.N.Y. Aug. 4, 2016) (collecting cases). The FTC does not oppose the relief requested by the Receiver.

As explained, the Preliminary Injunction binds Garcia and this Court "retains jurisdiction to enforce its order," including through "the inherent power to sanction contempt of its orders." *Alderwoods Grp.*, 682 F.3d at 970. And I conclude that the Receiver has satisfied "the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *CFTC v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992). Ordinarily, then, I would order Garcia to show cause why he should not be held in contempt and "defend his failure on the grounds that he was unable to comply." *Id.* But in the present context, Garcia is ordered first to comply with the non-interference provision by ceasing personal communications with the Receiver and with the stay provision by dismissing the state court actions without prejudice. Garcia is warned again that he must seek leave of this Court before filing actions "that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities." PI at 35 § XVII. And if Garcia fails to promptly comply, he may be ordered to show cause why he should not be held in contempt and sanctioned as requested. *See* Mot. at 1–2 (requesting "Garcia's incarceration and impos[ition of] a fine of $1,000 per day until his compliance is secured," other "appropriate monetary sanction[s]," and measures to "ensure the[ir] collectability"); *see also Citronelle–Mobile*, 943 F.2d at 1304 (authorizing all of the above).

18

Finally, if Garcia seeks to sue the Receiver directly in state court, he is advised that *Barton*'s jurisdictional protections apply in Florida courts. *See Asset Recovery Grp., LLC v. Cabrera*, 233 So. 3d 1173, 1176 (Fla. 3d DCA 2017) ("The *Barton* doctrine has been recognized in Florida, and [it] applies equally whether a state court appointed receiver is sued in state court . . . [or] in federal court." (quotation and internal citations omitted)). That goes for purportedly "independent torts" like defamation so long as they are within the Receiver's authorized scope. *See Rosetto v. Murphy*, 733 F. App'x 517, 520 (11th Cir. 2018) (per curiam) (explaining that "a receiver's release of defamatory reports to the media is insufficient to demonstrate that the receiver engaged in activities prima facie beyond the scope of the official function of a state court receiver." (internal quotation marks omitted)). More still, "court-appointed receivers . . . enjoy judicial immunity for acts taken within the scope of their authority." *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 602–03 (11th Cir. 1985). Because judicial immunity is immunity from suit, not just liability, I may order Garcia to pay costs incurred by the Receiver in defending frivolous actions brought in violation of the injunction. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *see also FTC v. Leshin*, 719 F.3d at 1235 (permitting fines to "compensate the complainant for losses sustained" (citation omitted)).

## IV.  CONCLUSION

Accordingly, it is **ORDERED:**

1.    The Receiver's Motion for an Order to Show Cause (Doc. 179) is

      **GRANTED in part.**

2.    The Preliminary Injunctions (Docs. 69, 78) remain in effect. Garcia

      is prohibited from "[i]nterfering with the Receiver's efforts to

      manage or take custody, control, or possession of the Assets or

      Documents subject to the receivership" or "[r]efusing to cooperate

      with the Receiver or the Receiver's duly authorized agents in the

      exercise of their duties or authority under any order of this Court."

      To facilitate these prohibitions, Garcia shall not directly

      communicate with the Receiver and must direct all

      communications to the Receiver's counsel.

3.    No later than **October 28, 2025**, Hamlet Garcia, Jr., is directed to

      dismiss without prejudice the following state court actions

      targeting the Receiver and/or the Receivership Entities: (1) *Garcia*

      *v. Perez*, Case No. 25-003322-SC (Fla. 6th Cir. Ct filed Apr. 3,

      2025), and (2) *Garcia v. Judicial Threats to Interstate Access to*

      *Florida Courts*, Case No. 25-001864-CI (Fla. 6th Cir. Ct. filed Apr.

      12, 2025). The Receiver must notify this Court of Garcia's

compliance or if the state court otherwise dismisses the defamation action under *Barton*.

**ORDERED** in Tampa, Florida, on October 20, 2025.

Kathryn Kimball Mizelle
United States District Judge